IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| R.L. Mlazgar Associates, Inc., | ) | Case No. 6:22-cv-04729-JDA |
| Plaintiff, | ) | |
| v. | ) | **OPINION AND ORDER** |
| HLI Solutions, Inc.; Litecontrol Corporation; Progress Lighting, Inc., | ) | |
| Defendants | ) | |
| _____ | ) | |
| Litecontrol Corporation; HLI Solutions, Inc. | ) | |
| Counter Claimants, | ) | |
| v. | ) | |
| R.L. Mlazgar Associates, Inc. | ) | |
| Counter Defendant. | ) | |

This matter is before the Court on a motion for partial judgment on the pleadings by Plaintiff/Counter Defendant R.L. Mlazgar Associates, Inc. ("Mlazgar"). [Doc. 34.] For the reasons below, the Court denies the motion.

Mlazgar filed this action on December 30, 2022, and subsequently filed an Amended Complaint, which alleges numerous state law claims as well as a claim for violations of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. [Docs. 1; 13.] On February 6, 2023, Defendants/Counter Claimants HLI Solutions, Inc. ("Hubbell") and Litecontrol Corporation ("Litecontrol") (collectively, the "Company") filed an Answer to the Amended Complaint and a Counterclaim (the "Counterclaim"). [Doc. 22.] Mlazgar, in

turn, filed an Answer to the Counterclaim. [Doc. 30.] On April 3, 2023, Mlazgar filed a motion for partial judgment on the pleadings, contending that the Counterclaim should be dismissed with prejudice. [Doc. 34.] The Company then filed a response in opposition to the motion on April 17, 2023 [Doc. 37], and Mlazgar filed a reply on April 21, 2023 [Doc. 39]. Accordingly, the motion is ripe for review.[1]

## **BACKGROUND**[2]

Hubbell and Litecontrol are sister companies that produce complementary lighting products and often operate under a singular contract with a given sales representative. [Doc. 22 at 13 ¶ 10.] Hubbell is a manufacturer that offers a wide range of indoor and outdoor lighting products for industrial, commercial, and institutional applications, and Litecontrol is a company involved in the design, development, manufacture, and marketing of innovative, high-quality architectural lighting systems. [*Id.* at 13 ¶¶ 8–9.]

Mlazgar is a Minnesota-based architectural lighting sales agency specializing in commercial, industrial, hospitality, and other sectors and serving the design community in the Upper Midwest, including Minnesota, Wisconsin, and the Dakotas. [*Id.* at 13 ¶ 11.] As described more fully below, for many years Mlazgar operated under contract as the exclusive sales agent for the Company in various territories.

Mlazgar first entered into an Exclusive Sales Representation Agreement with the Company in 2010 covering the territory of Minnesota and the Dakotas. [*Id.* at 13 ¶ 12.] Later, in 2014 and 2016, Mlazgar and the Company entered into new Exclusive Sales Representation Agreements, adding territories in Western Wisconsin and the Milwaukee

---

[1] This case was reassigned to the undersigned on February 13, 2024. [Doc. 55.]

[2] The Background section is a summary of the allegations contained in the Counterclaim. [Doc. 22 at 12–18 ¶¶ 1–34.]

and Green Bay districts, respectively. [*Id.* at 13–14 ¶¶ 13–14.] Thereafter, on January 1, 2019, Mlazgar and the Company entered into a new Exclusive Sales Representation Agreement that replaced those prior agreements. [*Id.* at 14 ¶ 15; Doc. 22-1.]

One year later, on January 1, 2020, the parties amended the 2019 agreement (the "2020 Amendment"). [Docs. 22 at 14 ¶ 16; 22-2.] As a part of the 2020 Amendment, the Company provided Mlazgar with additional financial incentives, which the Company would recoup over the term of the Agreement. [Doc. 22 at 14 ¶ 17.] Among other things, the Company agreed to provide funding for Mlazgar to hire two new employees to sell the Company's products in the Wisconsin territory. [*Id.*] That funding totaled up to $600,000 for a period of three years beginning in 2020. [*Id.*] The 2020 Amendment also provided for certain guaranteed commissions for the sale of the Company's products in Wisconsin. [*Id.*] The 2019 Exclusive Sales Representation Agreement and the 2020 Amendment are referred to hereinafter collectively as the "Agreement."

Under the Agreement, Mlazgar was bound to act as the Company's exclusive sales representative through December 31, 2023, in a large territory encompassing Minnesota, Wisconsin, South Dakota, North Dakota, and the Upper Peninsula of Michigan (the "Territory"). [*Id.* at 14 ¶ 18.] In agreeing to act as the Company's *exclusive* sales representative in the Territory, Mlazgar made certain representations and undertook certain duties to the Company, including representing "that it would 'use its best efforts to solicit orders for and otherwise promote the Company's Products and to increase the sale of Products within the Territory'"; agreeing "that it would not 'sell, market, or solicit for sale any product of any manufacturer . . . that competes with the Company' without the Company's prior approval"; agreeing that it would "'enter into no agreement (whether

3

written or oral) with others contrary to the terms of [the Agreement]'"; and agreeing to a confidentiality provision providing "that Mlazgar would 'not disclose to any third party at any time during the term of this Agreement, or any extension thereof, or thereafter, any trade secrets, design details, prices, price policies, processes, or operational procedures or any other information supplied in confidence by the Company in relation to the Products or the Company's affairs or business or method of carrying on business.'" [*Id.* at 14–15 ¶¶ 19–20 (alterations in original) (quoting Doc. 22-1 at 2–4, 11 (¶¶ 4(a), 4(m), 4(k), ¶ 25 of the Agreement)).] Indeed, during the period from 2014 through the fall of 2020, Mlazgar established itself as a premier sales representative for the Company, responsible for more than 100 million dollars in sales of the Company's products and earning millions of dollars in premium commissions. [*Id.* at 15 ¶ 21.]

On approximately October 20, 2020, it came to the attention of personnel of the Company that Mlazgar had signed, or was about to sign, an agency agreement with one of the Company's key competitors, a company called Cooper Lighting. [*Id.* at 15 ¶ 22.] Personnel at the Company also learned that Mlazgar was combining with another company, Elan Lighting, which served as Cooper Lighting's agent for Wisconsin. [*Id.*] Cooper Lighting, the Company and another company comprise the "Big Three" manufacturers of commercial and industrial ("C&I") lighting products and systems. [*Id.* at 16 ¶ 23.] C&I agents generally do not simultaneously represent more than one of these manufacturers, and a C&I agent cannot successfully and loyally represent one without disadvantaging the others. [*Id.*]

Upon learning about Mlazgar's actions, on October 20, 2020, the Company sent Mlazgar a letter informing Mlazgar that it had learned of the Cooper Lighting issue and

would not consent to Mlazgar entering into such an agreement.  [*Id.* at 16 ¶ 24.]  The letter noted that any such agreement would violate paragraphs 4(k) and 4(m) of the Agreement.  [*Id.*]  The Company sought assurances from Mlazgar that it had not entered into such an agreement with Cooper Lighting and that it had no intentions to do so and demanded those assurances no later than October 27, 2020.  [*Id.*]

Mlazgar responded to the Company's letter on October 26, 2020, but did not confirm its intentions regarding Cooper Lighting, let alone provide the requested assurances.  [*Id.* at 16 ¶ 25.]  Mlazgar instead stated only that it would not "do anything to jeopardize this relationship or engage in any activity that would breach the contract between the parties."  [*Id.* (internal quotation marks omitted).]

After learning that Mlazgar had indeed entered into an agency agreement with Cooper Lighting on or about November 15, 2020, the Company sent a letter to Mlazgar dated November 17, 2020.  [*Id.* at 16 ¶ 26; Doc. 22-3.]  The letter stated that Mlazgar was in material breach of § 4 of the Agreement and that the Company would terminate Mlazgar as its agent for good cause on February 16, 2021, if Mlazgar failed to cure its defaults by January 17, 2021, by ending its representation of Cooper Lighting, among other steps.  [Doc. 22 at 16 ¶ 26; Doc. 22-3.]  Nevertheless, Mlazgar elected to continue that representation.  [*Id.* at 17 ¶ 27.]  As a result, the Company sought representation from a new agent in the Territory.  [*Id.* at 17 ¶ 28.]  Mlazgar's breach resulted in several million dollars in damages to the Company in the form of lost profits, expenses in finding and onboarding a new sales representative, and damage to the Company's goodwill.  [*Id.* at 17 ¶¶ 29, 33.]

In its Counterclaim, the Company alleges a single claim for breach of contract, seeking money damages for injuries "including, but not limited to, lost profits due to Mlazgar's failure to complete its term as exclusive sales representative, and costs and expenses to find and onboard a new sales representative." [*Id.* ¶ 34.] The Company also demands an award of costs and attorneys' fees. [*Id.* at 18.]

## APPLICABLE LAW

**Judgment on the Pleadings Standard**

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, a court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (internal quotation marks omitted). "Thus, [t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Integon Gen. Ins. Co. v. Bartkowiak ex rel. Bartkowiak*, No. 7:09-cv-03045-JMC, 2010 WL 4156471, at *2 (D.S.C. Oct. 19, 2010) (alteration in original) (internal quotation marks omitted). A court should apply the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6) and should grant a motion for judgment on the pleadings "only if the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Lewis v. Excel Mech., LLC*, No. 2:13-cv-281-PMD, 2013 WL 4585873, at *2 (D.S.C. Aug. 28, 2013) (internal quotation marks omitted); *see also Burbach Broad. Co. of Del. v. Elkins Radio*

*Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (noting that the standard applicable for motions made under Rule 12(c) is the same as for those made under Rule 12(b)(6)).

**Law Relating to Contracts**

"The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." *Hotel & Motel Holdings, LLC v. BJC Enters., LLC*, 780 S.E.2d 263, 272 (S.C. Ct. App. 2015).  In a breach of contract claim, "[t]he measure of damages is determined by the parties' agreement."  *QHG of Lake City, Inc. v. McCutcheon*, 600 S.E.2d 105, 108 (S.C. Ct. App. 2004).  "While it is a question of law for the court to determine whether a contract's language is susceptible to more than one meaning, where a contract's material terms are ambiguous, their meaning becomes a question of fact unsuitable for a motion to dismiss."  *Fludd v. S. State Bank*, 566 F. Supp. 3d 471, 487 (D.S.C. 2021).

## **DISCUSSION**

Mlazgar argues that it is entitled to dismissal of the Counterclaim because the only types of damages the Company seeks are prohibited by paragraph 9(h) of the Agreement. [Docs. 34-1 at 5–7; 39 at 3–5.]  The Company rejects Mlazgar's construction of that paragraph, contending that Mlazgar's argument is based on "tortured logic" and a "strained interpretation of [paragraph] 9(h)."  [Doc. 37 at 6–11.]

The Court begins with the relevant contract language.  Section nine of the Agreement pertains to its termination.  [Doc. 22-1 at 6–8.]  Paragraph 9(a) provides that the Agreement is effective for five years and will automatically renew afterwards for successive one-year terms unless a party gives written notice of its intent not to renew at least 90 days prior to the end of the then-current term.  [Doc. 22-1 at 6–7.]  Paragraph

9(f) provides that the Agreement may be terminated with shorter than 90 days' notice if both parties agree in writing. [*Id.* at 8.] Paragraph 9(a) further provides that the parties have the right to terminate the Agreement immediately upon notice for "cause" and defines the circumstances that constitute "cause."[3] [*Id.* at 7.]

Section nine also describes the consequences of a party terminating the Agreement. [*Id.* at 7–8.] As is relevant for a termination for cause, paragraph 9(b) provides that "[i]mmediately upon the giving or receiving of said termination notice by the Company or in the event of termination pursuant to Paragraph 9(a) hereof, the Company shall have the right to appoint a sales representative to replace [Mlazgar] in the Territory." [*Id.* at 7.] Additionally, paragraph 9(h) provides:

---

[3] Under the Agreement,

> "Cause" is defined to be: (i) any failure of [Mlazgar] to fully and properly perform any duties or obligations thereunder; (ii) any action by [Mlazgar] which is detrimental to the Company, its reputation, Products or sales, including without limitation, criminal misconduct, bankruptcy, or insolvency; (iii) any change in the management or equity ownership of [Mlazgar] which is not approved by the Company; (iv) a reduction in personnel of [Mlazgar], which in the reasonable opinion of the Company, could have a material adverse effect upon [Mlazgar's] ability to perform its duties hereunder; (v) any reason set forth in Paragraph 10, below; (vi) the failure of [Mlazgar] to comply with any federal, state or local law or regulation applicable to [Mlazgar's] business; (vii) if [Mlazgar] assigns or attempts to assign any of its rights and responsibilities under this Agreement; or (viii) if [Mlazgar] commits a criminal, fraudulent or material dishonest act with respect to the Company or any of its employees, customers, suppliers, affiliates or business associates or if the Company reasonably believes [Mlazgar] has breached Section 17 of this Agreement.

[Doc. 22-1 at 7.]

> Any termination of this Agreement in accordance with its terms, shall not entitle either party to any compensation or payment for goodwill which may have been established or any termination pay, severance pay, indemnity or damages on account of present or prospective profits on sales or anticipated sales, or on account of expenditures made in connection with the business or any account for any other cause *by reason of such termination* notwithstanding any law to the contrary.

[*Id.* at 8 (emphasis added).]

The dispute here specifically concerns the parties' divergent interpretations of paragraph 9(h). Mlazgar maintains that the paragraph unambiguously means that a party who terminates the Agreement for cause waives entitlement to the enumerated remedies that the party otherwise might have for the breach. [Doc. 34-1 at 6–7.] Mlazgar further argues that because the Company in its Counterclaim seeks only the types of damages identified in paragraph 9(h), the Counterclaim fails to state a claim. [*Id.*] The Company, on the other hand, contends that the language at issue was not intended to limit the remedies of a party terminating the Agreement for cause based on the other party's breach. [Doc. 37 at 6–11.] The Company argues that if the parties had intended such an unusual result, they would have used much clearer language to convey that. [*Id.* at 7.]

The Court concludes that the Company's interpretation is at least a reasonable one and thus precludes judgment on the pleadings. Paragraph 9(h) can reasonably be understood to limit only damages that may be recovered "by reason of [the] termination." [Doc. 22-1 at 8.] In a factual scenario whereby a party terminates for cause based on a breaching party's refusal to cure the breach, the Agreement could reasonably be read not to provide the terminating party's recovery of lost profits and the like because such damages could be found to be *by reason of the breach and failure to cure* rather than by

9

reason of the termination.[4]  Moreover, the fact that paragraph 9(h) applies only when the termination is "in accordance with [the Agreement's] terms" provides a further indication that the language is intended to protect, not limit, the terminating party.  [*Id.*]  Had the parties intended Mlazgar's suggested construction, there would have been no reason to limit its application to instances where the party terminating the Agreement terminated in accordance with the Agreement's terms.

Additionally, as the Company argues [Doc. 37 at 7], it is hard to imagine why the parties would want to agree that a party who is faced with an ongoing breach by the other party would be forced to remain in the Agreement to avoid waiving its right to a remedy that would make it whole.  See *Koon v. Fares*, 666 S.E.2d 230, 233 (S.C. 2008) ("Where one interpretation of a contract makes it unusual or extraordinary and another interpretation, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction prevails."); *Twenty Ninth Ave. Corp. v. Great Atl. & Pac. Tea Co.*, 428 S.E.2d 734, 735 (S.C. Ct. App. 1993) ("[A] contract should receive sensible and reasonable construction and not such construction as will lead to absurd consequences.").  Such a term would be inequitable and would potentially reward the breaching party's behavior in circumstances such as those alleged in the Counterclaim.  One would expect that if the parties had intended to produce such an unorthodox term, they would have used much clearer language to do so.[5]  Given the lack of clarity of the language and the unlikely result that Mlazgar's proposed interpretation would produce,

---

[4] Under that reading, the phrase "either party" in paragraph 9(h) would serve to emphasize that the provision applies regardless of which party terminates the Agreement.
[5] For example, the parties could have specified that "a party terminating the Agreement shall not" be entitled to recover the types of damages identified.

the Court concludes that there is at least a factual dispute concerning whether the Company's construction should be adopted, and thus Mlazgar is not entitled to judgment on the pleadings. See *Fludd*, 566 F. Supp. at 487.

## **CONCLUSION**

Wherefore, based upon the foregoing, Mlazgar's motion for partial judgment on the pleadings [Doc. 34] is DENIED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

April 15, 2024
Greenville, South Carolina