IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| R.L. Mlazgar Associates, Inc., | ) | Case No. 6:22-cv-04729-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HLI Solutions, Inc.; Litecontrol Corporation; Progress Lighting, LLC, Hubbell Incorporated, | ) ) ) | |
| | ) | |
| Defendants | ) | **OPINION AND ORDER** |
| _____ | ) | |
| | ) | |
| Litecontrol Corporation; HLI Solutions, Inc., | ) ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| R.L. Mlazgar Associates, Inc., | ) | |
| | ) | |
| Counter Defendant. | ) | |
| _____ | | |

This matter is before the Court on motions to dismiss filed by Progress Lighting, LLC ("Progress") [Doc. 194] and by Hubbell Incorporated ("Hubbell") [Doc. 207] pursuant to Rules 8, 9, and 12(b)(6) of the Federal Rules of Civil Procedure. Progress moves to dismiss Counts III, IV, V, VI, XIII, XIV, XVI, XVII, and XVIII in R.L. Mlazgar Associates' ("Mlazgar's") Second Amended Complaint ("SAC"). [Doc. 194.] Hubbell moves to dismiss the SAC in its entirety. [Doc. 207.] Mlazgar has responded to both motions [Docs. 217; 242], and both Progress and Hubbell have filed replies [Docs. 236; 254]. These motions are now ripe for consideration.

## BACKGROUND[1]

Mlazgar brings this action against Defendants HLI Solutions, Inc. ("HLI"), Litecontrol Corporation ("Litecontrol"), Progress, and Hubbell, (collectively, "Defendants").[2]  [Doc. 183.]  Hubbell is a Connecticut corporation with its headquarters and principal place of business in Shelton, Connecticut.  [*Id*. ¶ 9.]  HLI is a Connecticut corporation that was wholly owned by Hubbell with its headquarters in Shelton, Connecticut, and its principal place of business in Greenville, South Carolina.  [*Id*. ¶ 6.]  Litecontrol is a Massachusetts corporation that was wholly owned by Hubbell with its headquarters in Shelton, Connecticut, and its principal place of business in Plympton, Massachusetts.  [*Id*. ¶ 7.]  Progress is a Delaware limited liability company with its headquarters and its principal place of business in Greenville, South Carolina.  [*Id*. ¶ 8.]  While this action was pending, Hubbell sold its interest in Progress, and Progress converted to a limited liability company.  [*Id*.]

Mlazgar was a sales representative for HLI, Litecontrol, and Progress, and successfully marketed and solicited orders for their commercial and industrial lighting products in exchange for commissions and other compensation.  [*Id*. ¶ 1.]  In October 2020, HLI and Litecontrol began working with Mlazgar's direct competitor JTH Lighting Alliance, Inc.; JTH Lighting Alliance Wisconsin, LLC; JTH Holdings Inc.; and/or JTH Lighting Iowa, LLC (collectively, "JTH").  [*Id*. ¶ 2.]  Mlazgar alleges that around this time,

---

[1] The Background section is a summary of the allegations contained in the SAC. [Doc. 183.]

[2] Mlazgar contends the Defendants presented themselves to the market as Hubbell and that employees of Defendants used "hubbell.com" email addresses.  [Doc. 183 ¶¶ 32–33.]  Mlazgar also contends HLI and Litecontrol operated on and shared the same virtual sales resources system managed by Hubbell. [*Id*. ¶ 35.]  Defendants also shared common officers and employees.  [*Id*. ¶¶ 40–41.]

Defendants also began withholding commissions and other amounts due to him and thwarted his ability to perform under the contracts while also demanding performance. [*Id*.]

By letter dated October 20, 2020, HLI's Vice President/General Manager of Commercial and Industrial Lighting, Tom Benton, told Mlazgar's CEO, Mark Mlazgar ("Mark") that HLI's contract with Mlazgar "is in effect until at least December 31, 2023, and may be terminated only by Hubbell Lighting, for cause, or by mutual agreement of the parties." [*Id*. ¶ 19 (internal quotation marks omitted).] Then, by letter dated November 17, 2020, HLI's Vice President/General Manager Commercial, Jim Farrell, told Mark that HLI's contract with Mlazgar would "terminate for good cause effective at the close of business on February 16, 2021 ('Termination Date'), unless, no later than January 17, 2021 ('Cure Deadline'), Mlazgar has cured" certain alleged defects, including an alleged failure by Mlazgar to "use its best efforts to solicit orders for and otherwise promote [HLI's] Products and to increase the sale of Products within the Territory."[3] [*Id*. (internal quotation marks omitted).] Between October 2020 and February 2021, Mlazgar used its best efforts to promote, sell, and increase the sales of Defendants' products, obtaining millions of dollars in sales for Defendants and earning hundreds of thousands of dollars in commissions and other amounts for which Defendants have yet to compensate Mlazgar. [*Id*. ¶ 20.]

Meanwhile, and during this purported "cure period," Defendants engaged Mlazgar's direct competitor, JTH, to represent them in the same territories that Mlazgar

---

[3] The SAC alleges that "Farrell served concurrently as Vice President & General Manager, Commercial at Hubbell, Vice President of Finance at Progress, and Vice President & General Manager, Commercial at HLI and Litecontrol." [Doc. 183 ¶ 41.]

represented them, including in Eastern Wisconsin, even though JTH had no sales presence there. [*Id*. ¶ 21.] Mlazgar contends that to staff and jumpstart JTH's new Eastern Wisconsin office, Defendants conspired with JTH to recruit seven Mlazgar employees—Justin Hendrickson, Jamie Napolitano, Nicholas Pucci, Christopher Klein, David Mantey, Michael Simonson, and David Huber (collectively, "Mlazgar's Former Employees")—to steal Mlazgar's confidential, proprietary, and trade secret information, and to interfere with Mlazgar's contracts and business relationships. [*Id*. ¶¶ 3, 21.] The information on Mlazgar's systems derives independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use and includes highly confidential and competitively valuable documents.[4] [*Id*. ¶ 22.] Mlazgar undertook reasonable and significant efforts to maintain the secrecy of this information, including cybersecurity measures, user identification, and password protection, confidentiality agreements, confidentiality policies and procedures, confidentiality provisions in employee handbooks, and use of both inside and outside information technology personnel to secure the information. [*Id*. ¶ 26.]

Mlazgar contends that Defendants, JTH, and Mlazgar's Former Employees together stole hundreds of thousands of Mlazgar's confidential, proprietary, and trade secret documents and induced manufacturers to breach their contracts or to end

---

[4] Mlazgar contends these documents consist of an account services notebook, pricing information, quote and order history, applications and engineering project information, contact information, contracts, sales and project summaries, commission summaries, account ledgers, contact lists, customer lists and histories, market strategies, product specifications, project quotes and bids, internal memoranda, financial data, contract terms and conditions, organizational charts, emails, and many other documents. [Doc. 183 ¶ 22.]

relationships with Mlazgar—all while Mlazgar's Former Employees remained employed by Mlazgar. [*Id*. ¶ 27.] Several manufacturers that had actual or prospective contracts with Mlazgar breached, terminated, or chose not to enter into contracts with Mlazgar and appointed JTH's new office in Eastern Wisconsin to replace Mlazgar as their representative because of the actions of Defendants, JTH, and Mlazgar's Former Employees. [*Id*. ¶ 28.]

On February 16, 2021, after Defendants had helped establish JTH in Eastern Wisconsin, HLI and Litecontrol terminated their contract with Mlazgar, alleging Mlazgar had failed to cure the alleged breaches despite Mlazgar's success in soliciting sales for them during the purported cure period and despite Defendants' efforts to thwart that success. [*Id*. ¶ 29.] Progress similarly terminated its contract with Mlazgar on May 11, 2021. [*Id*.] And, to date, despite repeated demands, Defendants have failed and refused to pay any of the commissions or other amounts owed to Mlazgar or to return any of Mlazgar's information, and they have continued to unlawfully use that information and to interfere with Mlazgar's contracts and relationships. [*Id*. ¶¶ 4, 61.]

Mlazgar has brought the following claims against the Defendants in the SAC:

Count I–       Breach of Contract against HLI and Litecontrol

Count II–      Breach of Contract against Progress

Count III–     Breach of Contract Accompanied by a Fraudulent Act against all Defendants

Count IV–      Common Law Fraud against all Defendants

Count V–       Constructive Fraud against all Defendants

Count VI–      Negligent Misrepresentation against all Defendants

Count VII–     Violations of the South Carolina Trade Secrets Act, S.C. Code §§ 39-8-20, et seq., against all Defendants

Count VIII–    Violations of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq., against all Defendants

Count IX–      Conversion against all Defendants

Count X–       Tortious Interference with Contractual Relations against all Defendants

Count XI–      Tortious Interference with Prospective Contractual Relations against all Defendants

Count XII–     Aiding and Abetting Breaches of Fiduciary Duties against all Defendants

Count XIII–    Common Law Unfair Competition against all Defendants

Count XIV–     Violations of the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10, et seq., against all Defendants

Count XV–      Violations of the Payment of Post-Termination Claims to Sales Representatives Act, S.C. Code §§ 39-65-10, et seq., against all Defendants

Count XVI–     Civil Conspiracy against all Defendants

Count XVII–    Unjust Enrichment against all Defendants

Count XVIII–   Promissory Estoppel against all Defendants

## APPLICABLE LAW

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal

conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

**Pleading Fraud Under Rule 9(b)**

Claims of fraud are held to a heightened pleading standard. Rule 9(b) of the Federal Rules of Civil Procedure requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Fourth Circuit Court of Appeals has held that Rule 9(b) requires pleading with particularity the time, place, and contents of the false representations, as well as the identity of the person making the representations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Rule 9(b) serves four purposes: (1) to put defendants on notice so that they have sufficient information to formulate a defense; (2) to

protect defendants from frivolous suits; (3) to eliminate fraud actions in which all facts are learned after discovery; and (4) to protect defendants from harm to their goodwill and reputation. *Id.*

"[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Id*. at 783 n.5. The Fourth Circuit has cautioned that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id*. at 784. Additionally, factual allegations based on "information and belief" are generally inappropriate under Rule 9(b) and insufficient to satisfy Rule 9(b)'s heightened pleading standard. *See, e.g.*, *Breckley v. Amway Corp*., No. 6:89-540-17, 1989 WL 140397, at *5 (D.S.C. Aug. 24, 1989) (finding the complaint "defective" because it included a number of factual allegations based on information and belief, which the court noted was "generally disallowed of pleadings pursuant to Rule 9(b)"); *see also United States ex. Rel. Wheeler v. Acadia Healthcare Co.*, 127 F.4th 472, 488 (4th Cir. 2025) (holding that unadorned allegation that a particular corporate policy existed was inadequate under Rule 9(b) when nothing in the complaint allowed the court to infer that the alleged corporate policy existed).

## DISCUSSION

**Breach of Contract Accompanied by a Fraudulent Act, Common Law Fraud, and Constructive Fraud Against Progress and Hubbell**[5]

Progress contends Mlazgar's claims for breach of contract accompanied by a fraudulent act, common law fraud, and constructive fraud should be dismissed for lack of any particularized allegations of misrepresentations made by Progress. [Doc. 194 at 5–8.] Hubbell likewise argues that these claims against Hubbell fail to satisfy the heightened particularity pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. [Doc. 207 at 15–19.]

Mlazgar contends, however, that Progress ignores its allegations that Jim Farrell made certain fraudulent statements to Mlazgar as an executive of Progress by letter dated November 17, 2020. [Doc. 217 at 9–11.] Mlazgar contends Farrell represented that Progress' contracts would remain in effect until terminated pursuant thereto and that it would allow Mlazgar a genuine opportunity to cure any alleged breaches. [*Id*. at 10.] Mlazgar alleges that it relied on the false statements to its detriment by continuing to perform under the contracts. [*Id*.] Mlazgar argues that Hubbell overlooks the same allegation that the Farrell letter made false representations. [Doc. 242 at 9.] Mlazgar contends that all Defendants made one misrepresentation by and through Farrell, who was acting within the scope of his concurrent employment for Hubbell, HLI, Litecontrol, and Progress. [*Id*. at 10–11.]

---

[5] Causes of action for fraud, constructive fraud, and breach of contract accompanied by a fraudulent act all require proof of similar elements, and thus the Court analyzes these claims together.

To state a cause of action for fraud in South Carolina, a plaintiff must allege facts showing: "(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury." *Ardis v. Cox*, 431 S.E.2d 267, 269 (S.C. Ct. App. 1993). As noted, Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with particularity by alleging "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *McCauley v. Home Loan Inv. Bank, F.S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal quotation marks omitted).

To establish a claim for constructive fraud, all the elements of fraud must exist except that "constructive fraud does not require the element of intent to deceive." *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 517 (S.C. 2016). Finally, to prove breach of contract accompanied by a fraudulent act, a plaintiff must demonstrate 1) a breach of contract; 2) fraudulent intent relating to the breaching of the contract and not merely to its making; and 3) a fraudulent act accompanying the breach. *Connor v. City of Forest Acres,* 560 S.E.2d 606, 612 (S.C. 2002). The Supreme Court of South Carolina has defined a "fraudulent act" as "any act characterized by dishonesty in fact or unfair dealing." *Id.* The fact that Defendants promised to perform under the Agreement and then failed to perform does not suggest a fraudulent act in and of itself. "If it did, every breach of a contract where a party fails to perform on a promise would become actionable as a breach of

contract accompanied by a fraudulent act." *Neuman v. Levan*, No. 8:08-03418-HFF, 2009 WL 1856569, at *3 (D.S.C. June 26, 2009).

Upon review, the Court notes that, in the SAC, Mlazgar alleges the representation by Farrell on November 17, 2020 was that "HLI's contract with Mlazgar would 'terminate for good cause effective at the close of business on February 16, 2021 ('Termination Date'), unless, no later than January 17, 2021 ('Cure Deadline'), Mlazgar has cured' certain alleged defects, including an alleged failure by Mlazgar to 'use its best efforts to solicit orders for and otherwise promote [HLI's] Products and to increase the sale of Products within the Territory.'" [Doc. 183 ¶ 19 (alteration in original); *see also id.* ¶¶ 41, 76, 81, 87, 91, 96 (alleging that Farrell was a vice president of Defendants).] Mlazgar contends that he relied on these promises and representations and that, when the representations were made, Defendants had no intention of honoring the contracts or providing him an opportunity to cure the alleged breaches. [*Id.* ¶¶ 78, 82, 92.] Even so, the SAC includes no allegation that Farrell made any such false representation on behalf of Progress or Hubbell, or that Progress or Hubbell made any representation to Mlazgar at all. Therefore, the SAC fails to allege representations by either of these parties with the requisite particularity required under Rule 9, which is fatal to Counts III, IV and V. *See Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 173 (4th Cir. 2007) (explaining that the Court "must ascertain whether the complaint states sufficient facts to permit a reasonable person to find that the plaintiff satisfied this element of his claim—that the defendant made a false or misleading statement") (emphasis omitted).

The fact that Farrell held positions with both Progress and Hubbell does not somehow allow Mlazgar to impute liability to Progress or Hubbell for Farrell's

representation made on behalf of HLI. The Court has found no basis in the law of this Circuit or elsewhere for imposing a trickle-down theory of fraud to Progress or Hubbell for representation made on behalf of HLI, even where Farrell was employed by both Progress and Hubbell.

Lastly, the fact that Mlazgar seeks to allege a conspiracy that includes all the named Defendants does not provide a bridge for imposing Farrell's alleged fraud onto Progress or Hubbell. Indeed, Mlazgar's civil conspiracy claim does not even specifically allege that there was fraud in the conspiracy. [*See* Doc. 183 ¶¶ 180–84.] Accordingly, the Court concludes that Mlazgar has failed to state fraud-related claims against either Progress or Hubbell. Counts III, IV and V are, therefore, dismissed as to Progress and Hubbell.

**Negligent Misrepresentation Against Progress and Hubbell**

Both Hubbel and Progress argue that Mlazgar's cause of action for negligent misrepresentation should be dismissed. [Doc. 194 at 8 n.2 ("Because [Mlazgar] fails to allege what representation Progress made, even under the less demanding pleading standard of Rule 8, [Mlazgar's] claim for negligent misrepresentation should likewise be dismissed."); Doc. 207 at 19 (contending that Mlazgar's negligent misrepresentation claim does not even satisfy the Rule 8 standard).] The Court agrees.

As noted above, Mlazgar has failed to allege any misrepresentations made by either Progress or Hubbell. Therefore, Count VI is dismissed as to Progress and Hubbell. *See Brown v. Stewart*, 557 S.E.2d 676, 680–81 (S.C. Ct. App. 2001) (explaining that a negligent misrepresentation claim requires proof that the defendant made a false representation to the plaintiff).

**Common Law Unfair Competition Against Progress and Hubbell**

Both Progress and Hubbell move to dismiss Count XIII for common law unfair competition. [*See* Doc. 194 at 8–10; Doc. 207 at 26–30.] Progress argues that a claim of common law unfair competition has customarily been treated as one of common law trademark or intellectual property infringement and therefore the presence of a valid, protectable mark is a precondition to a claim for common law unfair competition. [Doc. 194 at 8–10.] Progress contends that Mlazgar fails to allege that it owned a valid trademark. [*Id*. at 9.] Hubbell argues that "there is no federal common law for unfair competition or deceptive trade practices" and that "South Carolina common law on unfair competition is coextensive with the elements of proving a Lanham Act claim." [Doc. 207 at 26–28.] Hubbell further argues that Mlazgar "does not even endeavor to plead a Lanham Act claim along with the rest of its throw-in-the-kitchen-sink claims." [*Id*. at 29.] Mlazgar offers no response to these arguments. [Docs. 217; 242.]

South Carolina common law on unfair competition is coextensive with the elements of proving a Lanham Act claim. *See, e.g.*, *Shakespeare Co. v. Silstar Corp. of Am., Inc.*, 802 F. Supp. 1386, 1399 (D.S.C. 1992) (noting that the elements of common law unfair competition and trademark infringement under South Carolina law are identical to the elements for proving a Lanham Act claim), *rev'd on other grounds*, 9 F.3d 1091 (4th Cir. 1993); *Muhler Co. v. Ply Gem Holdings, Inc.*, No. 2:11-CV-862-SB, 2015 WL 12910628, at *3 (D.S.C. July 13, 2015) ("A claim for common law unfair competition shares the same elements as a claim under section 1125(a) of the Lanham Act."), *aff'd*, 637 F. App'x 746 (4th Cir. 2016). To prevail under a common law unfair competition claim, a plaintiff must demonstrate:

> 1) that it possesses a mark; 2) that the defendant used the mark; 3) that the defendant's use of the mark occurred in commerce; 4) that the defendant used the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services; and 5) that the defendant used the mark in a manner likely to confuse consumers.

*Monster Daddy, LLC v. Monster Cable Prods., Inc.*, No. 6:10-1170-MGL, 2013 WL 5467854, at *7 (D.S.C. Sept. 30, 2013) (internal quotation marks omitted).

Here, Mlazgar does not allege it owned a valid trademark. Accordingly, Count XIII is dismissed as against Progress and Hubbell.

**South Carolina Unfair Trade Practices Act Violation Against Progress and Hubbell**

Progress and Hubbell move to dismiss Mlazgar's claim under the South Carolina Unfair Trade Practices Act ("SCUTPA"), arguing that Mlazgar "has not sufficiently alleged Progress' alleged actions would have an adverse impact on the public interest" [Doc. 194 at 10] and that the "SCUTPA cannot be used to provide redress for private wrongs" [Doc. 207 at 31]. Progress contends that the SAC "is devoid of any allegations that Progress committed acts in the past or that Progress has a procedure in place that would create a potential for repetition." [Doc. 194 at 11.] Hubbell contends that all Mlazgar pleads are the elements of an SCUTPA claim without specific facts to support those elements. [Doc. 207 at 30.]

Mlazgar argues "that Defendants imposed upon Mlazgar a fraudulent and illusory cure period, while at the same time thwarting Mlazgar's efforts in the market" and that "[i]t is reasonable to infer that such conduct has an adverse impact on the public interest." [Doc. 242 at 15.] Mlazgar also contends that "Defendants attempted to impose unreasonable restrictions on competition" and that this "[a]nticompetitive conduct may

constitute a violation of the SCUTPA."[6]  [*Id*. at 15–16]  Mlazgar also contends "that Defendants['] acts had, have, and will continue to have an adverse impact on the public interest."  [*Id*. at 16.]

To survive a motion to dismiss, a plaintiff must plead facts showing that the act complained of constitutes an unfair trade practice as contemplated by the SCUTPA and that the unfair or deceptive practice or act adversely impacts the public interest.  *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994) (citations omitted).  Under South Carolina law, unfair or deceptive acts have an adverse impact upon the public interest if those acts have the potential for repetition.  *Nauful v. Navy Fed. Credit Union*, No. 3:23-cv-03257, 2025 WL 1836702, at *3 (D.S.C. July 3, 2025).  In contrast, conduct that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim.  *Jefferies*, 451 S.E.2d at 23.  Because only unfair acts that adversely affect the public interest give rise to liability under the SCUTPA, "[a] deliberate or intentional breach of contract, without more, is not a violation of" the SCUTPA.  *Wilson Grp., Inc. v. Quorum Health Res., Inc.*, 880 F. Supp. 416, 426 (D.S.C. 1995); *see also S.C. Nat'l Bank v. Silks*, 367 S.E.2d 421, 423 (S.C. Ct. App. 1988) ("A mere breach of

---

[6] Mlazgar cites to *Chuck's Feed & Seed Co. v. Ralston Purina Co.*, 810 F.2d 1289 (4th Cir. 1987), for the proposition that anticompetitive conduct may constitute a violation of the SCUTPA.  [Doc. 242 at 16.]  In that case, the Fourth Circuit held that the SCUTPA "is aimed at two distinct kinds of conduct: unfair or deceptive practices and anticompetitive practices."  *Chuck's Feed & Seed Co.*, 810 F.2d at 1292.  The court held that when a SCUTPA claim challenging an exclusive dealing agreement is directed at anticompetitive—as opposed to unfair or deceptive—practices, the plaintiff must show that the arrangement has an adverse effect on competition.  *Chuck's Feed & Seed Co.*, 810 F.2d at 1295–96.  The SAC, in contrast, alleges that Defendants' challenged actions were "unfair and deceptive" rather than anticompetitive and does not allege an adverse effect on competition.  [Doc. 183 ¶¶ 162–68.]  Accordingly, *Chuck's Feed & Seed Co.* is no help to Mlazgar here.

contract does not constitute a violation of" the SCUTPA.).  A plaintiff must use *specific facts* to show that members of the public were or were likely to be affected.  *Jefferies,* 451 S.E.2d at 23.  Absent specific facts, any claim about adverse public impact is merely speculative.  *Id.*; *see id.* at 24 ("In the course of human endeavor, every action has some potential for repetition.  The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element.").

In the SAC, Mlazgar alleges that "Defendants' acts had, have, and will continue to have an adverse impact on the public interest."  [Doc. 183 ¶ 165.]  However, beyond this conclusory statement, Mlazgar provides no specific facts establishing that Defendants have conducted the same kind of actions in the past or that their procedures or business practices created a potential for repetition in the future.  The Court concludes that, without more, Mlazgar has failed to allege facts to establish an adverse effect on the public interest sufficient to recover under the SCUTPA.  *See Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-cv-01682, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) (finding insufficient to establish an adverse impact on the public interest the allegation that "Coca-Cola has been accused of engaging in unfair methods of competition and deceptive business practices" in the past and that "there is a legitimate threat that Coca-Cola will continue to engage in unfair practices and repeat its deceptive business practices, and, as a result, Coca–Cola's actions adversely affect the public interest").  Accordingly, Count XIV is dismissed as to Progress and Hubbell.

**Civil Conspiracy Against Progress and Hubbell**

Progress and Hubbell argue that Mlazgar's claim for civil conspiracy should be dismissed because Mlazgar's allegations merely incorporate the prior allegations without pleading additional facts in furtherance of the conspiracy apart from those pled to support

the prior claims [Doc. 194 at 12; Doc. 207 at 14] and because, under South Carolina law, no conspiracy can exist between a parent and its subsidiary companies [Doc. 207 at 7–10]. Hubbell further argues that, assuming the claimed conspiracy is extended to include JTH and JTH's employees, a conspiracy cannot exist in the principal-agent or employer-employee context because the principal and the agent and employer and employee are not considered separate entities for purposes of a claimed civil conspiracy. [*Id.* at 10–12.]

Mlazgar contends that in *Paradis v. Charleston County School District*, 861 S.E.2d 774 (S.C. 2021), "the South Carolina Supreme Court abolished a prior requirement that a plaintiff alleging civil conspiracy must plead (and prove) special damages that go beyond the damages alleged in other claims." [Doc. 217 at 4.] Mlazgar argues that the SAC alleges additional overt acts in furtherance of the conspiracy to include

> revoking Mlazgar's access to sales resources, (*Id.* at ¶ 18); broadcasting to the lighting industry that Mlazgar no longer represented Defendants during the purported cure period (*Id.* at ¶ 18); termination of Defendants' contracts with Mlazgar (*Id.* at ¶ 29); coordination amongst the Defendants of the termination of their respective contracts with Mlazgar (*Id.* at ¶ 50); coordination amongst the Defendants of their withholding of commissions from Mlazgar (*Id.* at ¶ 50); appointment of JTH to represent HLI and Litecontrol (*Id.* at ¶¶ 2, 3, 21, 22 ); recruitment of Mlazgar's employees for JTH (*Id.* at ¶¶ 3, 21, 22, 27); assisting Mlazgar's former employees and JTH in establishing a new office in Eastern Wisconsin (*Id.* at ¶ 27, 29); provision of advance bridge funding and Mlazgar's historic sales data to JTH (*Id.* at ¶ 27); and consultation by Jim Farrell (an executive of Hubbell, HLI, Litecontrol, and Progress) with other Hubbell corporate leadership, JTH, and Mlazgar's former employees regarding the termination of Mlazgar and appointment of JTH. (*Id.* at ¶¶ 21, 41, 44, 54, 57).

[*Id.* at 5; Doc. 242 at 4–5.] Mlazgar argues that "cases decided after *Paradis*, [in] this district [have] held claims of civil conspiracy sufficient at the pleading stage where the

complaints included less factual detail about the alleged conspiracy than that which is contained in" the SAC.  [Doc. 217 at 6–7 (citing *Brabham Oil Co. v. Fuel Trader Supply, LLC*, No. 5:24-1170-JFA, 2024 WL 3567349, at *8–9 (D.S.C. July 29, 2024); *In re Church*, 657 B.R. 431, 444 (Bankr. D.S.C. 2024); *Hedgepath v. E. Richland Cnty. Pub. Serv. Dist.*, No. 3:21-cv-01705, 2022 WL 673741, at   *4 (D.S.C. Mar. 7, 2022); *Parkins by and Through Turner v. South Carolina*, No. 7:21-2641-HMH, 2022 WL 524895, at *20 (D.S.C. Feb. 22, 2022), *amended on reconsideration,* 2022 WL 19333417 (D.S.C. April 5, 2022)).]

Mlazgar also argues that the "intracorporate conspiracy doctrine" does not bar Mlazgar's civil conspiracy claim.  [Doc. 242 at 5–8.]  Although Mlazgar concedes that the "'intracorporate conspiracy doctrine' provides that a conspiracy cannot exist solely between a parent company and its subsidiary, solely between a principal and its agent, or solely between an employer and its employee," Mlazgar argues that it "does not allege that JTH was subject to Defendants' control such that a fiduciary relationship of principal-agent arose between JTH and Defendants."  [*Id.* at 6–7.]  Additionally, Mlagzar alleges that its "former employees conspired with Defendants and JTH while still employed by Mlazgar" and therefore no intercorporate protections may be claimed.[7]  [*Id.* at 8 (emphasis omitted).]

---

[7]  Mlazgar also argues that, in allowing Mlazgar leave to amend its Amended Complaint, the Court determined that the SAC adequately states a claim for a civil conspiracy in which Progress and Hubbell are involved.  [Doc. 217 at 6.]  That is not correct.  In allowing the amendment, the Court merely recognized that, if given the opportunity, Mlazgar could "possibly" or "probably" allege a claim for civil conspiracy.  [Doc. 198 at 3, 7.]  At the same time, the Court recognized that a motion to dismiss would surely follow any amendment and the Court would be ruling on that motion.  [*Id.* at 4, 5, 7]; *see also Noblee Bottling, LLC v. Gora LLC*, No. 3:20-CV-00363-KDB-DCK, 2023 WL 4750124, at *3 (W.D.N.C. July 25, 2023) (holding that the fact that the court had permitted amendment of a complaint did not require the court to deny a motion to dismiss for failure to state a claim).

To state a civil conspiracy claim, a plaintiff must allege four elements: "(1) the combination or agreement of two or more persons, (2) to commit an unlawful act or a lawful act by unlawful means, (3) together with the commission of an overt act in furtherance of the agreement, and (4) damages proximately resulting to the plaintiff." *Paradis*, 861 S.E.2d at 780. The plaintiff "must plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 875 (S.C. Ct. App. 2009) (citations omitted), *overruled on other grounds by Paradis*, 861 S.E.2d 774.[8] Stated another way, "[w]here the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong." *Todd v. S.C. Farm Bureau Mut. Ins.*, 278 S.E.2d 607, 611 (S.C. 1981) (quoting 15A C.J.S. Conspiracy § 33, at 718), *overruled on other grounds by Paradis*, 861 S.E.2d 774; *see also Coker v. Norwich Com. Grp., Inc.*, No. 3:20-03071-MGL, 2021 WL 4037472, at *6 (D.S.C. Sept. 3, 2021) (dismissing a civil conspiracy claim because the plaintiff "merely reincorporated his previous claims and added conclusory allegations the Individual Defendants were engaged in a civil conspiracy").

A plaintiff cannot avoid pleading separate and independent acts in furtherance of the conspiracy by simply couching the conspiracy claim as an alternative to other causes

---

[8] *Paradis* eliminated a requirement to plead special damages but not the requirement to plead additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint. *See Paradis*, 861 S.E.2d 779; *Jinks*, 2021 WL 4711408, at *3.

of action asserted in the complaint. *See Jinks v. Sea Pines Resort, LLC*, No. 9:21-cv-00138-DCN, 2021 WL 4711408, at *4 (D.S.C. Oct. 8, 2021). Where a plaintiff has not identified "additional acts in furtherance of the conspiracy separate and independent from other wrongful acts alleged in the complaint," *Hackworth*, 682 S.E.2d at 875, he has failed to state a valid claim for civil conspiracy, *Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 494 (D.S.C. 2023).

In its civil conspiracy claim, Mlazgar merely states the elements of the cause of action for civil conspiracy and incorporates by reference the allegations of the previously pled causes of action. [Doc. 183 ¶¶ 180–84.] Mlazgar has not identified additional acts in furtherance of the conspiracy separate and independent of other wrongful acts alleged in the SAC—nor has it even purported to attempt to do so—which is fatal to this claim. *See Coker*, 2021 WL 4037472, at *6 (holding that the plaintiff's civil conspiracy claim failed because he "merely reincorporated his previous claims and added conclusory allegations that the Individual Defendants were engaged in a civil conspiracy"); *see also Code v. adidas Am., Inc.*, No. 6:23-4997, 2024 WL 637356, at *4 (D.S.C. Jan. 11, 2024) ("While this Court recognizes the incorporation of facts throughout a complaint is a common practice in pleadings, the drafter of the complaint must still connect those facts with the necessary elements of the claim to put a defendant on sufficient notice of the allegations asserted against him."). Accordingly, the Court grants Progress' and Hubbell's motions to dismiss as to Count XVI.

**Equitable Claims Against Progress**

Progress contends that Mlazgar's equitable claims for unjust enrichment and promissory estoppel fail because a valid contract governs Mlazgar's dispute with Progress. [Doc. 194 at 15–17.] Mlazgar argues that it is entitled to allege claims for

promissory estoppel and unjust enrichment as alternative remedies at the pleading stage regardless of the existence of a contract. [Doc. 217 at 13.]

"In South Carolina, a party is generally precluded from pursuing a claim for either unjust enrichment or promissory estoppel where a valid contract governs the subject matter in dispute." *Besley v. FCA US, LLC*, No. 1:15-cv-01511-JMC, 2016 WL 109887, at *3 (D.S.C. Jan. 8, 2016) (citing *Palmetto Health Credit Union v. Open Sols. Inc.*, No. 3:08-cv-3848, 2010 WL 2710551, at *4 (D.S.C. July 7, 2010) ("Recovery under a theory of unjust enrichment is available only where the rights and responsibilities at issue are not governed by an express contract") (citation omitted); *Glover v. Lockheed Corp.*, 772 F. Supp. 898, 907 (D.S.C. 1991) ("Promissory estoppel is inapplicable in situations where a contract exists since a necessary element of a valid contract is consideration.")).

The parties' consensus that a valid enforceable contract exists [*see* Doc. 183 ¶ 69; Doc. 194 at 15] dictates that this Court should grant Progress' motion as to the equitable claims. Counts XVII and XVIII are therefore dismissed as against Progress.

**Counts VII, VIII, IX, X, XI, XII, XV, XVII, and XVIII as Against Hubbell**

Hubbell argues that in Counts VII, VIII, IX, X, XI, XII, XV, XVII, and XVIII, Mlazgar does not attempt to plead any facts specific to Hubbell in relation to its claims and instead offers only formulaic recitations of the corresponding claim elements. [Doc. 207 at 19–23 & n.11, 33–34.] Hubbell argues that same or similar pleading failures infect all of Mlazgar's remaining claims as Mlazgar does no more than make conclusory statements; lodge unadorned the-defendant-unlawfully-harmed-me accusations; and offer labels, conclusions, formulaic recitations of the elements of its claims, and naked assertions devoid of further factual enhancement. [*Id.*]

The Court agrees with Hubbell. Mlazgar's allegations as to Counts VII, VIII, IX, X, XI, and XII merely recite the elements of the claims without alleging any action taken by Hubbell specifically. [Doc. 183 ¶¶ 108–90.] The allegations in Count XV mention Hubbell only in conclusorily alleging that Hubbell "conspired and colluded" with the other Defendants to withhold Mlazgar's commissions, and the allegations in Counts XVII and XVIII do not mention Hubbell specifically at all. [*Id*. ¶¶ 169–79, 185–95.] Mlazgar argues that Hubbell is liable for damages resulting from the wrongful acts of its co-conspirators in exercising this joint enterprise. [Doc. 242 at 3–8.] However, the Court has already explained why Mlazgar has failed to adequately allege civil conspiracy as against Hubbell. In the absence of any specific allegations against Hubbell, Counts VII, VIII, IX, X, XI, XII, XV, XVII, and XVIII fail to satisfy the *Twombly*/*Iqbal* standard, and thus Hubbell's motion to dismiss is granted as to those claims as well.[9]

**Applying the Court's Rulings to HLI and Litecontrol**

With regard to Counts XIII (common law unfair competition), XIV (SCUTPA), and XVI (civil conspiracy), XVII (unjust enrichment), and XVIII (promissory estoppel), although HLI and Litecontrol did not join in Progress' and Hubbell's motions to dismiss, the reasoning of the Court's rulings applies to those parties. Accordingly, Counts XIII, XIV, XVI, XVII, and XVIII are dismissed as against HLI and Litecontrol. *See Hill v. United Air Lines, Inc.*, No. 2:10-cv-3243-RMG-BM, 2011 WL 1113499, at *2 (D.S.C. Mar. 24, 2011) ("Although [the non-moving defendant] has not joined in the motion to dismiss, the same law and reasoning applies and thus also precludes [the] plaintiff's claim against [the non-

---

[9] Because the Court dismisses these claims on this basis, it does not address Hubbell's alternative arguments for dismissal of these claims.

moving defendant].").  Additionally, because the reasoning of the Court's rulings regarding Counts III (breach of contract accompanied by a fraudulent act), IV (common law fraud), V (constructive fraud), and VI (negligent misrepresentation) applies to Litecontrol, those three counts are dismissed as against Litecontrol.  *See id.*

## CONCLUSION

Wherefore, based on the above, the Court GRANTS Progress' motion to dismiss [Doc. 194] and GRANTS Hubbell's motion to dismiss [Doc. 207].  All Counts alleged against Hubbell are dismissed as against Hubbell, and Hubbell is therefore dismissed as a Defendant; Counts III, IV, V, VI, XIII, XIV, XVI, XVII, and XVIII are dismissed as against Progress; Counts XIII, XIV, XVI, XVII, and XVIII are dismissed as against HLI; Counts III, IV, V, VI, XIII, XIV, XVI, XVII, and XVIII are dismissed as against Litecontrol.  Accordingly, Counts II, VII, VIII, IX, X, XI, XII, and XV remain as against Progress; Counts I, III, IV, V, VI, VII, VIII, IX, X, XI, XII, and XV remain against HLI; and Counts I, VII, VIII, IX, X, XI, XII, and XV remain as against Litecontrol.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

August 5, 2025
Greenville, South Carolina