IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| R. L. MLAZGAR ASSOCIATES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HLI SOLUTIONS, INC.;<br>LITECONTROL CORPORATION;<br>PROGRESS LIGHTING, LLC; and<br>HUBBELL INCORPORATED,<br><br>Defendants.<br><br>– and –<br><br>HLI SOLUTIONS, INC. and<br>LITECONTROL CORPORATION,<br><br>Counterclaimants,<br><br>v.<br><br>R. L. MLAZGAR ASSOCIATES, INC.,<br><br>Counterclaim-Defendant. | ) | Civil Action No: 6:22-cv-04729-JDA<br><br><u>HLI'S PETITION FOR ATTORNEYS' FEES, COSTS, AND LITIGATION EXPENSES</u> |

Defendants HLI Solutions, Inc., and Litecontrol Corporation (collectively herein, "HLI") respectfully move the Court for an order awarding them their attorneys' fees, costs, and litigation expenses associated with this matter pursuant to Rule 54 of the Federal Rules of Civil Procedure, Local Civil Rules 54.02 and 54.03 (DSC), and Section 11(a) of the parties' Exclusive Sales Representation Agreement (HLI Trial Exhibit 110, and available online at Dkt. No. 278-2 (Ex. B to the Parties' Joint Statement of Stipulated Undisputed Material Facts)).

The requested sums are $2,453,398 in attorneys' fees and $235,022.40 in litigation expenses and costs. Each is discussed below and itemized in the accompanying declarations.

## BASIS FOR RELIEF

In Section 11(a) of the Exclusive Sales Representation Agreement, the parties expressly agreed that if either made a representation to a third party that was contrary to the terms of the ESRA, then that party would be responsible for all costs, expenses, and attorneys' fees arising from that representation. This broad fee-shifting provision states as follows:

> ***Each party agrees to indemnify, defend and hold harmless the other party from and against all costs, expenses, damages and liabilities, including attorneys' fees and costs of litigation, arising*** (i) out of or in connection with any third-party claim, proceeding, or lawsuit alleging that the other party breached its obligations under this Agreement, or ***(ii) from any representations or warranties made by the other party to a third party in violation of this Agreement***.

(ESRA § 11(a) (emphasis added).)

As the Court is aware, Mlazgar's representations to, and eventual agreement with, Cooper Lighting that Mlazgar could and would sell Cooper Lighting's products without first securing HLI's consent was a violation of the ESRA as a matter of law—exactly as the Court held after the close of all evidence on Day 8 of trial.

Because the parties expressly shifted the burden of paying all expenses and costs, including attorneys' fees, for precisely this type of conduct, HLI moves to enforce its contractual right to be made whole for its litigation spend arising from Mlazgar's actions. *See, e.g.*, *Westgate Myrtle Beach, LLC v. Holiday Hospitality Franchising Inc.*, Case No. 4:08-cv-03590-JMC, 2010 U.S. Dist. LEXIS 121388, at *8, 13–22 (D.S.C. Nov. 16, 2010) (awarding a defendant its attorneys' fees and costs pursuant to a contractual indemnity provision that required the plaintiff to pay the defendant all such fees and expenses arising from the defendant's efforts to "enforce any rights" under the contract), *aff'd* 478 F. App'x 756 (4th Cir. 2012); *see also Bayer Cropscience LP v. Albemarle Corp.*, Case No. 5:14-cv-412-BO, 2018 U.S. Dist. LEXIS 124281, at *10–11 (E.D.N.C.

July 25, 2018) (awarding attorneys' fees and costs pursuant to a contractual indemnity agreement that required payment of all such fees associated with a "breach of the representations, warranties, and covenants contained in the agreement").

## STANDARD FOR ATTORNEYS' FEES

The District of South Carolina uses a two-step model for evaluating fee requests. First, the Court establishes the lodestar value: hourly rate times the amount of hours spent. It then tests that lodestar value against twelve "reasonableness" factors. Local Civ. Rule 54.02(A) (DSC).

### I. HLI's Lodestar Value

#### A. Hourly Rates

HLI staffed this case extremely efficiently. Although this litigation involved an interstate dispute between sophisticated businesses who operate in a unique industry, virtually all work on the matter was performed by only two attorneys: Press Millen and Todd Carroll. During the three and a half years of this litigation, their respective hourly rates ranged from $1030 (2023) to $1295 (2026) for Mr. Millen, and $570 (2023) to $785 (2026) for Mr. Carroll. Additionally, to ensure that unnecessary fees were not incurred, as much work as possible was delegated to a single project manager and paralegal: Ann Quinlan, whose hourly rate has ranged from $545 (2023) to $585 (2026). These are the normal and customary rates for Mr. Millen, Mr. Carroll, and Ms. Quinlan, and HLI has paid these rates over the duration of the case.

#### B. Hours Spent on Litigation

HLI spent over 3,000 hours litigating this dispute, which involved successfully defending against 17 asserted claims and prosecuting its own breach of contract counterclaim that resulted in a $10.7 million jury verdict. However, to ensure the reasonableness of its requested fees, HLI has removed from its time entries activities associated with ingesting, reviewing, and processing

documents handled by Womble's eDiscovery team; entries associated with some motions practice before the Court; and entries related to a series of other litigation activities. All told, HLI has removed approximately 430 hours totaling approximately $189,000 from its request for fees.

As reflected in the attachment to Mr. Millen's declaration, HLI seeks to recover its fees associated with 2,588 hours, making the lodestar total $2,453,398 in reasonable attorneys' fees.

## II. "Reasonableness" Factors

This Court recognizes that the lodestar figure "is strongly presumed to be the reasonable fee." *Furgess v. UPS, Inc.*, Case No. 3:05-1206-CMC-JRM, 2007 U.S. Dist. LEXIS 26785, at *4 (D.S.C. Apr. 11, 2007). The *Barber* factors confirm the reasonableness of HLI's lodestar figure:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). Each is discussed below.

### A. Time and Labor Expended

The docket tells the story of this case. The public docket has ***over 850 entries*** over ***three and a half years***. This litigation included numerous dispositive motions, endless procedural/discovery motions, and cross-jurisdictional discovery by HLI of Mlazgar's negotiations and eventual contract with Cooper Lighting. Written discovery was voluminous, and

depositions (in South Carolina, Minnesota, Ohio, and Wisconsin) routinely pushed the 7-hour time limit. It all culminated in a trial that took nearly two weeks to complete.[1]

The Court should note that HLI staffed this matter leanly. It had only two counsel of record for this matter—Messrs. Millen and Carroll—and it rarely had both lawyers attend activities other than (1) meet-and-confers (to guard against Mlazgar's penchant for submitting after-the-fact statements about what happened during those conferences); (2) pretrial hearings and conferences with the Court; and (3) trial itself.[2]

Mlazgar, by contrast, staffed the case with ***14 different lawyers*** over the course of the litigation, had multiple counsel attend depositions and other routine litigation activities, and had three lawyers attend trial.

In short, HLI worked this extensive case as efficiently as possible, and this factor strongly supports the lodestar figure as being the appropriate measure of fees.

### B. Novelty and Difficulty of the Questions Raised

This case raised an incredible volume of issues through which HLI had to carefully navigate. The complaint alleged 17 causes of action against HLI and ran the full scope of business

---

[1] Exhausting litigation tactics and discovery overreach appear to be a familiar story in cases involving Mlazgar. *Cf. R.L. Mlazgar Assocs. v. Focal Point LLC*, Case No. 22-cv-942 (NEB/DJF), 2024 U.S. Dist. LEXIS 204941, at *2–3 (D. Minn. Nov. 12, 2024) (commenting that "[t]o observe that the parties have over-litigated this case is a vast understatement" and describing their "uniquely aggressive pretrial tactics," while describing Mlazgar's then-pending motion as seeking "relief that directly def[ies] the Court's directives by demanding yet another opportunity to conduct new document discovery after all applicable deadlines are decidedly and firmly closed").

[2] HLI briefly added a third attorney from Womble's Atlanta office, Robert Ambler, for the limited purpose of enforcing HLI's subpoena against Cooper Lighting in the Northern District of Georgia. Mr. Ambler's rate for this matter is $1,015, which is his customary rate; and Mr. Ambler worked 21.3 hours pursuing discovery of materials from Cooper Lighting that became critical to HLI's presentation to the jury.

torts: fraud, conspiracy, trade secrets, conversion, unfair trade practices, tortious interference, aiding and abetting breach of a fiduciary duty, statutory claims, and numerous others.

The litigation process revealed numerous peculiar questions of law, including whether Mr. Mlazgar and Mr. Kohl—two fact witnesses—would also be allowed to give expert testimony and, if so, the boundaries of their expert testimony; numerous questions raised regarding Mlazgar's damages expert's testimony and opinions; and a multi-month, multi-jurisdiction effort to secure relevant documents from Cooper Lighting that Mlazgar vigorously fought.

And the trial itself involved questions of law—for instance, determining what state's law applies to a claim for aiding and abetting breach of fiduciary duty when the defendant is located in South Carolina, yet the alleged fiduciary duty arose in and was breached by third parties in Wisconsin against a company based in Minnesota—that were complex, novel, and remained the subject of debate until the jury instructions were finalized the morning of Day 9 of trial.

This second factor also supports the propriety of HLI's lodestar figure.

### C. Skill Required to Handle the Litigation

This case required considerable skill to properly litigate it. In addition to navigating the numerous procedural issues that arose over the course of three and a half years of litigation and successfully defending against a 17-count complaint that sought millions of dollars across a variety of legal theories, the trial itself required exceptional skill to conduct.

For Mlazgar's part, the trial itself became a "trial within a trial" involving JTH's personnel and a series of insinuations that Mlazgar wanted the jury to draw regarding HLI's awareness of and involvement with whatever misdeeds may or may not have occurred with Mlazgar's former employees. Until the verdict was rendered, there was a substantial risk that the jury would ultimately get confused as to who was responsible for what actions, and the jury could have

wrongly assigned blame and significant liability to HLI for the actions of others. This risk was particularly acute given the industry-specific background from which this dispute arose, and about which the jurors were constantly given conflicting information regarding industry norms and even industry terminology.

Avoiding $55 million of tort liability, securing nearly $11 million of affirmative relief, and jealously protecting HLI's sales-through-regional-agents business model through this multiweek trial required tremendous skill.

**D. Counsel's Opportunity Cost**

This factor is largely inapplicable, as counsel was paid an hourly rate within the range they normally charge clients. *See Furgess*, 2007 U.S. Dist. LEXIS 26785, at *4 (recognizing that "not all [*Barber* factors] may affect the fee in a given case").

**E. Customary Fee for Like Work**

The fees requested in HLI's lodestar are those customarily charged by Messrs. Millen and Carroll and their colleagues for complex commercial litigation like that presented here. They are within the range of rates charged by counsel for complex commercial litigation in this market. *See* Ex. C, Declaration of Chief Judge William Wilkins (attesting to the reasonableness of Womble's rates in this matter); *see also Black v. Mantei & Assocs.*, Case No. 3:23-cv-04149-MGL, 2024 U.S. Dist. LEXIS 70943, at *7–8 (D.S.C. Apr. 18, 2024) (approving hourly rates of $600 and $700 for local attorneys simply for seeking remand of a removed action, an issue that is significantly less complicated and with significantly less at stake than the instant case).

Moreover, these were negotiated rates with HLI, and it has paid these rates throughout this litigation. Acceptance in the marketplace is the bellwether sign that the rates are reasonable.

### F. Counsel's Expectations

This factor is largely inapplicable, though counsel did anticipate HLI recovering its attorneys' fees and costs at the close of the case pursuant to the parties' ESRA.

### G. Time Limitations Imposed by the Client or Circumstances

This factor is inapplicable, as the litigation spanned more than three and a half years.

### H. Amount in Controversy and Results Obtained

Mlazgar asked the jury to award it over $55 million dollars in tort damages on top of the $739,424 to which HLI stipulated it owed Mlazgar in unpaid commissions. The jury awarded Mlazgar only an additional $739,424.

By contrast, HLI asked the jury to award it $10,724,878 in actual damages, and that is exactly what the jury awarded.

As the industry publication *Inside Lighting* bluntly put it: "The outcome did not go Mlazgar's way." *See* "Mlazgar Wins Commissions, Loses Millions to Hubbell Lighting," *Inside Lighting* (Aug. 28, 2026), *at* Mlazgar Wins Commissions, Loses Millions to Hubbell Lighting.

And, as the Court heard during the testimony, Mlazgar was challenging HLI's (and the entire lighting industry's) business model of using exclusive sales agents in territories around the United States. An HLI loss at trial would have been incredibly disruptive to how it sells its lighting and controls products. By any measure, this was a tremendous outcome for HLI: avoiding over $55 million in exposure while also securing over $10.7 million on its own counterclaim and protecting an essential component of its business.

### I. Experience, Reputation, and Ability of Counsel

Declarations from Messrs. Millen (Ex. A) and Carroll (Ex. B) are attached for the Court's consideration.

### J. Undesirability of the Case Within the Community

This factor is inapplicable.

### K. Nature and Length of the Professional Relationship Between Counsel and the Client

Counsel and their colleagues have represented HLI in a series of other litigated cases and transactional matters over the last several years, and HLI has paid counsel for their work at the customary rates described herein.

### L. Attorneys' Fees Awarded in Similar Cases

As Judge Currie observed when awarding fees following a defense verdict rendered by a jury in a complex civil case over 15 years ago: "Commercial disputes litigated through trial are rare in the District of South Carolina, and awards of attorneys' fees based on contractual provisions rather than statutes are even more rare." *Palmetto Health Credit Union v. Open Solutions Inc.*, Case No. 3:08-cv-3848-CMC, 2011 U.S. Dist. LEXIS 692, at *32 (D.S.C. Jan. 4, 2011).

Nevertheless, the fees sought here—$2,453,398 to defend over three and a half years of aggressive litigation, avoid over $55 million in tort liability, and successfully prosecute a $10.7 million counterclaim—are comparable to the fees awarded in commercial disputes following trials within this District, South Carolina, and the Fourth Circuit, often in cases where damages awards were lower than that secured by HLI here. *See, e.g.*, *Open Solutions Inc.*, 2011 U.S. Dist. LEXIS 692, at *34 (awarding $857,341 in fees and costs to the defendant for successfully defeating the plaintiff's claims despite the jury awarding $0 in damages on the defendant's contract counterclaim); *Super Duper, Inc. v. Mattel, Inc.*, Case No. 6:05-1700-HFF-WMC, 2009 U.S. Dist. LEXIS 28421, at *11 (D.S.C. Mar. 31, 2009) (awarding $2.64 million in attorneys' fees to the defendant/counterclaimant after finding that the plaintiff owed the defendant $999,113 in lost profits on a counterclaim of trademark infringement), *aff'd* 382 F. App'x 308 (4th Cir. 2010); *see*

*also Signature Flight Support Corp. v. Landow Aviation LP*, 730 F. Supp. 2d 513, 531 (E.D. Va. 2010) (awarding over $1.3 million in fees and costs pursuant to a contractual fee-shifting provision to a plaintiff who was awarded $0 on its claim for breach of contract but nevertheless secured declaratory and injunctive relief enforcing the contract), *aff'd* 442 F. App'x 776 (4th Cir. 2011); *Maybank v. BB&T Corp.*, 787 S.E.2d 498, 518–19 (S.C. 2016) (affirming attorneys' fees in the amount of $2.65 million on a South Carolina unfair trade practices claim where the trial court calculated the lodestar "base attorney fee" as $1.77 million and then added a "1.5 multiplier" to reach the final fee awarded).

## **EXPENSES AND COSTS**

In addition to recovering attorneys' fees, the parties agreed that HLI would recover "all costs" and "expenses" associated with this litigation. (ESRA § 11(a).) This contractual language is broad and directs recovery of charges beyond just those permitted in the traditional "bill of costs" provided by 28 U.S.C. § 1920:

> Palmetto Health argues that several of Open Solutions' expenses are not recoverable because they are not permitted under 28 U.S.C. § 1920. The court disagrees. In this case, Open Solutions is seeking costs and expenses pursuant to a ***contractual agreement***, not pursuant to a statute. There is no reason, therefore, to limit Open Solutions' recovery to those categories of costs and expenses permitted under 28 U.S.C. § 1920.

*Open Solutions Inc.*, 2011 U.S. Dist. LEXIS 692, at *33–34 (emphasis supplied by the Court); *see also Westgate Myrtle Beach, LLC v. Holiday Hospitality Franchising Inc.*, Case No. 4:08-cv-03590-JMC, 2011 U.S. Dist. LEXIS 155482, at *10–11 (D.S.C. June 2, 2011) (holding that a contractual provision permitting recovery of "expenses" encompasses virtually all charges incurred with the litigation).

HLI's litigation expenses and costs—three and a half years of travel, meals, lodging, transcripts, filing fees, expert fees, and other litigation-related disbursements—are itemized in the attachment to Mr. Millen's declaration. They total $235,022.40.

**CONCLUSION**

This litigation has been extensive, and Mlazgar's litigation tactics were unnecessarily wasteful and aggressive. Throughout, HLI responded appropriately and efficiently to Mlazgar's endless motions practice, discovery efforts, and attempts to distract and exhaust. Just consider the juxtaposition of trial itself: Mlazgar used seven trial days working through its case despite the Court's repeated demands that Mlazgar streamline its trial presentation and stop presenting redundant, cumulative, and confusing information. HLI, by contrast, called just two witnesses—Juli Saitz and Jim Patnaude—and proved its $10.7 million counterclaim in a single trial day.

And as the Court knows, the stakes of this case were enormous—both monetarily, and within the lighting industry as a whole. A Mlazgar win would have overturned the industry's established structure of utilizing local sales agents, and it would have created enormous disruption for HLI's own agency model. HLI had to win, and it did.

The parties unambiguously agreed that Mlazgar would reimburse HLI for all of its attorneys' fees, expenses, and costs for litigation "arising from any representations or warranties made by [Mlazgar] to a third party [here, Cooper Lighting] in violation of this Agreement." (ESRA § 11(a).) HLI respectfully moves the Court for an order enforcing that fee-recovery provision and award it $2,453,398 in attorneys' fees, which comfortably fit within the reasonable scale when measured against the *Barber* factors and Mlazgar's litigation conduct, and which are less than one-third of the sum the jury awarded HLI through its counterclaim; and $235,022.40 in litigation expenses and costs. HLI further reserves the right to update their request in reply to account for

additional fees incurred in preparing this motion and additional costs and expenses related to this matter that have accrued but not yet come due as of the time of this filing.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

*s/M. Todd Carroll*
M. Todd Carroll
Federal Bar No. 9742
todd.carroll@wbd-us.com
1221 Main Street, Suite 1600
Columbia, SC 29201
(803) 454-6504

Pressly M. Millen
*Pro Hac Vice*
press.millen@wbd-us.com
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
(919) 755-2100

*Attorneys for Defendants HLI Solutions, Inc. and Litecontrol Corporation*

September 14, 2026